**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JAMES FRAGAKIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 06-CV-2596 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| THE ILLINOIS STATE TOLL | ) | |
| HIGHWAY AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is a motion for summary judgment filed by Defendant Illinois State Toll Highway Authority ("Defendant" or "Tollway") against Plaintiff James Fragakis ("Plaintiff" or "Fragakis") pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion is GRANTED.

**BACKGROUND[1]**

Plaintiff was employed by Defendant, with whom he began working in 1978 as a light equipment operator. At the time of Plaintiff's termination in 2003, he was working as Building Maintenance Manager, part of Facilities Services, a division of the Operations Department. Plaintiff's management responsibilities included the ability to independently approve expenses in amounts up to "a couple hundred dollars." At all relevant times, Fragakis reported to Facilities Services Manager Robert Smith ("Smith"), who then reported to Chief of Operational Services

---

[1]The following factual background is taken from the parties' summary judgment submissions. To the extent that Defendant's statement of undisputed material facts are undisputed by Plaintiff, they are deemed admitted. *See* Local Rule 56.1(b)(3)(C).

-1-

Paul Volpe ("Volpe").  In 2003, Tollway Executive Director Jack Hartman ("Hartman") was given a mandate from Governor Rod Blagojevich to reform the agency.  As a part of this reformation effort, Volpe recommended that Plaintiff's position be eliminated to increase business efficiency, on the grounds that it was "unnecessary and redundant."

Immediately prior to Plaintiff's termination, the Tollway received a request to pay a subcontractor, Martin Concrete ("Martin"), for additional work done on a contract for improving the agency's Central Administration Building ("Martin Payment").  The main contractor under that agreement was Cantore Concrete ("Cantore").  In conjunction with this request, Plaintiff received a message from the office of an official located in Springfield, Illinois, in which he believes the caller identified himself as Senate Majority leader Vincent Demuzio (Democrat) ("Demuzio").  In this message, the man identifying himself as Demuzio encouraged Plaintiff to ensure that the additional payment was made to Martin.  Plaintiff shared this message with Smith and then, at Smith's encouragement, forwarded it to Volpe as well.  Volpe does not recall ever receiving this message, and he and Plaintiff never spoke about its contents.  So far as Plaintiff is aware, McPartlin was never aware of the Demuzio message, and McPartlin in fact disclaims any awareness of the message.  Plaintiff was never encouraged to approve the Martin payment by any Tollway employee.

On September 30, 2003, Brian McPartlin and Marilyn Johnson met with plaintiff and informed him that his position had been eliminated in conjunction with the Tollway reorganization.  Plaintiff also received a letter at that meeting which conveyed the same information.  In addition to the changes in Plaintiff's employment status, the reorganization resulted in the elimination of other vacant and filled positions, as well as the transfer of two

employees to other departments.[2] At the meeting and in the letter, no mention was made of any party's political affiliation. Plaintiff was generally inactive in political activities, and other than the fact that he had worked at the Tollway during Republican-leaning years, he has no reason to believe that other employees were aware of his politics.

Around the week of October 8, 2003, Volpe met with representatives from Cantore and Martin and told them that the work in question went beyond the original contract. While the contractor and subcontractor claimed they had received written approval, Volpe told them they had failed to produce the required written authorization for the project's expansion. The original contract with Cantore had been entered into on June 27, 2002 for $107,030.00, and was paid by the Tollway. No additional payment was made to Cantore, and no direct payment was ever made to Martin.

During his employment, Plaintiff received approval for and took three training courses. Tollway initially reimbursed Plaintiff for the $449.10 he had paid in tuition for these courses. According to the Tollway's employee policy manual, employees are required to stay in their positions for two years following such training-based reimbursement. The tuition value was withheld from Plaintiff's final paycheck, apparently because he had not stayed on the requisite two years. However, on or around March 16, 2007, Defendant supplied Plaintiff with a check in order to reimburse him for the funds taken from his final paycheck.

Plaintiff first pursued this matter in state court. However, it was removed from the Circuit Court of the 12th Judicial Circuit, Will County, IL on May 6, 2005, and was assigned to

---

[2]There is some confusion/debate as to the total number of positions shifted or eliminated. *See* Pl.s' Resp. to Def.'s Facts ¶ 17.

this Court with the case number 05-CV-02741. This Court dismissed a majority of the counts on March 2, 2006 and, because the sole Federal grounds for the complaint therefore failed, remanded all remaining state law claims to Will County, IL. Plaintiff then filed an amended complaint that included the non-dismissed claims of breach of contract for back wages (Count VI) and retaliatory discharge under Illinois law (Count VIII), along with a new claim of retaliatory discharge under Federal law (Count IX). The matter was again removed to this Court and given the new case number 06-CV-02596.[3]

## STANDARDS

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To successfully oppose the motion for summary judgment, the non-movant must

---

[3]Presumably as a result of this change in case numbers, Plaintiff incorrectly filed his response to Defendant's summary judgment motion in the current action under the previous case number of 05-CV-02741. This Court will overlook this error and consider the papers as if they were filed under the appropriate case number of 06-CV-02596.

do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir.2001); Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989). This evidence provided by the nonmovant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Plaintiff does not have the assistance of counsel in this matter, and has chosen instead to represent himself. This court must therefore apply "less stringent standards" than it would to "formal pleadings drafted by lawyers." *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir.1999).

**ANALYSIS**

The complaint in its current form alleges that Defendant: (1) violated Plaintiff's First Amendment rights by terminating his employment in retaliation for his political views[4]; (2) retaliated against him in violation of state law; and (3) breached a contract by failing to reimburse tuition expenses as required in the employee handbook.

*Standard to be applied to federal claims*

At the outset, this Court must clarify the federal law under which Plaintiff has brought this action. In his amended complaint, Plaintiff cites to the authority of "Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983 and 1985, and 42 U.S.C. §§ 2000e(a), (f) and 2000e-2(a)." However, Title VII – and the included subsections 2000e(a), (f) and 2000e-2(a) – do not provide a proper basis of action for this Plaintiff. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting an employer from discriminating on the basis of race, color, religion, sex, or national origin). Defendant also seeks dismissal of Plaintiff's claim under § 1985 on the grounds that political discrimination does not fall under that statute, but this issue is not so clearcut as to warrant outright grant of summary judgment on the matter. *Compare Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985) (finding that political conspiracy is not appropriate for consideration under §

---

[4] Plaintiff arguably might have claimed that he deserved First Amendment protection because he was allegedly confronted with issues of public corruption, above and beyond questions concerning political party affiliation. *See Schad v. Jones*, 415 F.3d 671, 675 (7th Cir. 2005). However, Plaintiff has not framed his allegations in this manner, i.e., that he had an intent to correct the allegedly corrupt activity, or that such an intent served as the basis for retaliation. Rather, at all times he has stated that issues of party affiliation predominated. In any event, Plaintiff has provided no evidence that his rejection of the Martin payment was intended to move into the public sphere in a manner that might qualify it as protected speech. *Spiegla*, 371 F.3d at 938 (finding that in order to decide whether constitutional protection is warranted where the alleged area of public concern is corruption, "it is necessary to look at the point of the speech in question: was it the employee's point to bring wrongdoing to light?").

1985(3)) *with Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000) (finding that the "class-based invidiously discriminatory animus" of § 1985 includes "conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty").

In any event, the bulk of Plaintiff's complaint amounts to a claim of political affiliation retaliation that is properly understood as a §1983 claim. It is true that there are similarities between the analysis applied in this type of case and those applying Title VII protections. *See De Mauro v. Loren-Maltese*, Not Reported in F.Supp.2d, 2002 WL 31133202, at *1 (N.D. Ill. 2002) ("Although it is true that different burden-shifting schemes apply in Title VII cases than in political affiliation cases, both types of cases ultimately turn on the fundamental notion of "but for" causation."). However, this Court follows an approach distinct from the *McDonnell-Douglas* framework under Title VII, which nonetheless requires consideration of burden shifting and but-for causation.

It is now well-recognized that firing a non-policymaking public employee because of his or her political affiliation violates the First Amendment and is actionable under 42 U.S.C. § 1983. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1080 (7th Cir. 1992) (citing *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980)). Although public employees generally have no entitlement to a public job, such employment is a government benefit that cannot be conditioned in a way that hinders "the exercise of the rights of free belief and association." *Hudson v. Burke*, 617 F. Supp. 1501, 1507 (N.D. Ill. 1985), aff'd, 913 F.2d 427 (7th Cir. 1990). *See also Anderson v. Holmes*, 16 F.3d 219, 220 (7th Cir. 1994) (citing *Elrod*, 427 U.S. at 356-57) (describing the rationale underlying the rule in these words: "The idea that individuals can lose their jobs based on their political beliefs, even when those convictions in no

way impact on job performance, offends the fundamental First Amendment principle that the government should not punish people based solely on the views they hold."); *Fisher v. Krafewski*, 873 F.2d 1057, 1065 (7th Cir. 1989), cert. denied, 493 U.S. 1020 (1990) ("[A] public official may fire subordinates for a good, bad, or indifferent reason--any but an unconstitutional reason.").

In political affiliation cases such as this, courts will generally require that plaintiffs provide concrete evidence of employers' awareness of the adversely-impacted employee's political views. *Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir.1996) ("In a case where a plaintiff asserts his own rights in an attempt to establish a First Amendment claim in an employment context, he must present evidence that his speech (or conduct) was constitutionally protected and that it was a substantial factor in his demotion."). However, a plaintiff can also succeed by showing that it was his *lack* of affiliation – in this instance his lack of affiliation to the Democratic party – rather than active party affiliation that resulted in the retaliatory action. Such non-affiliation is also protected by the First Amendment. *See Hermes v. Hein*, 742 F.2d 350, 353 n. 3 (7th Cir. 1984); *Branti v. Finkel*, 445 U.S. 507, 516-17, 100 S.Ct. 1287, 1293-94 (1980). Therefore, Plaintiff can satisfy his initial burden by demonstrating an adverse employment action taken "because []he lacked sponsorship from someone in the current administration," *Bosques v. Kustra*, Not Reported in F.Supp., 1994 WL 866083, at *8 (Nov. 14, 1994, N.D. Ill.) (citing *Hermes*, 742 F.2d at 353 n. 3), or an implicit or explicit requirement that he "provide, in some acceptable manner, support for the favored political party," *Elrod v. Burns*, 427 U.S. 347, 358, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976).

A case for political discrimination requires: (1) that the plaintiff exercised his First Amendment rights; (2) that the exercise was a "motivating factor" in the decision to terminate him, and (3) the defendant cannot show by a preponderance of the evidence that it would have reached the same decision to terminate the plaintiff even in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). Plaintiff's prima facie case of a First Amendment violation under *Mt. Healthy* must therefore show that his conduct is constitutionally protected, and that such conduct was a "substantial" or "motivating factor" in the Authority's decision to terminate him. *See id.* at 287; *see also Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992). If Plaintiff succeeds in establishing a prima facie case, the burden of proof then shifts to the defendant to show that it would have taken the same action regardless of Plaintiff's political affiliation. *See id.*; *see also Cromley v. Bd. of Educ.*, 17 F.3d 1059, 1067-68 (7th Cir. 1994), cert. denied, 115 S. Ct. 74 (1994). Importantly, a defendant does not have to provide a legitimate reason for the adverse employment action until the plaintiff has come forward with sufficient evidence to support a prima facie case of political discrimination. *See Garrett*, 961 F.2d at 633.

A plaintiff's burden of establishing that the substantial or motivating factor in his termination was retaliation for his political activities is a burden of persuasion, which he must meet by a preponderance of the evidence. *Rakovich v. Wade*, 850 F.2d 1180, 1189 (7th Cir.), cert. denied, 488 U.S. 968 (1988). That burden is not an insignificant one: a plaintiff cannot meet it "merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election." *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981), cert. denied, 455 U.S. 1021 (1982). Nevertheless, the plaintiff's burden is not so

rigorous that he must show that such retaliation was the sole motive for the Authority's actions. Rather, he need only show that it was a "decisive factor ... in the absence of which the opposite decision would have been reached." *Rakovich*, 850 F.2d at 1190 (emphasis in original).

*Retaliation under Federal law*

In the instant case, Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination based on political affiliation, and has failed to undermine Defendant's stated reason for the employment action, i.e., that it was done as part of a larger reorganization of Tollway operations and was intended to eliminate an unnecessary position. In response, Plaintiff maintains that the errors and discrepancies in the evidence make clear that Defendant was motivated to terminate Plaintiff – not his position – because of his refusal to make a questionable contract payment, or to make room for someone more closely connected to the Democratic party.

Defendant has generally shifted the focus of the Plaintiff's complaint and subsequent filings, pointing out that Plaintiff has failed to provide evidence of political activity. Insofar as Plaintiff wasn't an active or known political activist, Defendant is correct; Plaintiff has provided no evidence that he was directly active in politics so as to warrant First Amendment protection. There is no indication that any of the relevant decisionmakers were aware of Plaintiff's political affiliation in any way. There is in fact little reason to think that Tollway employees should have known, as Plaintiff has provided almost no evidence that he was active in any way: he is not affiliated with any political parties or groups; he has never expressed any political ideas to anyone at the Tollway; and he has not donated significant amounts of time or money to any particular campaign. In fact, bald speculation as to the knowledge of his political affiliation is all that he does offer:

| | | |
|---|---|---|
| Q: | | You're not contending in that lawsuit that anyone knew of your political affiliation or lack thereof one way or another, right? |
| Fragakis: | | I figured it would be common knowledge since the Republicans held the governor's office for twenty-some years, and I would guess that most people suspected that most members of the Illinois Tollway were Republicans. |
| Q: | | Nobody knew, as far as you know, that you have one political view or another, right? |
| Fragakis: | | That I know of, no. |

Fragakis. Dep. at 215.

However, reading Plaintiff's allegations in the forgiving light appropriate to a pro se Plaintiff, a claim based on non-affiliation may yet remain. Isolated errant statements notwithstanding, Plaintiff generally does not argue that he was retaliated against based on protected political activity or speech, but rather because he failed to engage in political speech or activity in support of the Democratic party. *See Elrod v. Burns*, 427 U.S. at 358. The only real question is whether or not Plaintiff's failure to support allegedly Democratic party activities (i.e. either the payment to Martin or Democratic activities generally) was a reason for his firing and, if it was, whether that supports a § 1983 claim for retaliatory discharge. It is conceivable that such a scenario could implicate constitutional abuse and necessitate judicial intervention. *See Elrod v. Burns*, 427 U.S. 347, 358 ("The threat of dismissal for failure to provide that support unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise."). However, the political component of Tollway's actions must be clear, either because its purpose were clearly political, or because the way in which it acted divided the workplace population according to political lines. Plaintiff has failed to

establish that either the Martin payment or the manner in which he was replaced as a part of the reorganization provide a prima facie case of discrimination based on political affiliation.

As Plaintiff himself concedes, no one piece of evidence proves that there were political motivations behind his firing. *See* Summ J. Resp. at 7. However, he nonetheless maintains that "when all of the pieces are put together and examined, a convincing theme of insidious motives and deceit emerges." *Id.* Plaintiff's allegation that the "inconsistencies, improbabilities, outright falsehoods, departures from policy and unreasonable actions" amount to the suspicious timing and general testimony related to the Martin payment, as well as and various other inconsistencies regarding the improper execution of Tollway's employment practices over the course of his termination (that it was his employment, not his position, that was terminated; Defendant's failure to follow Executive Order Number one; fact that Plaintiff was not offered another position when his position was eliminated; etc.).

The Martin transaction, and what followed, provides no proof of political motivation behind Plaintiff's termination. There is no doubt that Cantore requested payment above and beyond its contracted-for fee, for work it claimed was done by subcontractor Martin and approved by Tollway representatives. There is also little doubt that Plaintiff received a voicemail purporting to be from an Illinois political figure regarding this payment. *See* Fragakis Dep. at 162-68 (describing a message from "the senate majority leader, I believe he identified himself as Mr. Demuzio"); Smith Dep. at 17-21 (recalling listening to a message left for Plaintiff from a "high office in Springfield"); *compare* Volpe Dep. at 13, 22-23 (denying any recollection of listening to the Demuzio message). There is no remaining recording of that call, and its content is only vaguely characterized as having urged Plaintiff to make the payment to Martin.

However, whatever the substance or intent behind the phone call, it provides no evidence of politics at play in Plaintiff's termination: there is no indication that the caller was connected in any way to Tollway supervisors; there is no indication that the phone call engendered a negative response toward Plaintiff in those who heard it; and there is no evidence that the content of the phone call was conveyed to McPartlin, whom Plaintiff claims was ultimately responsible for his termination, Fragakis Dep. at 150.

In fact, any proof of retaliatory intent that can be based on the Demuzio message is based on mere speculation that he was connected to Tollway parties:

> Q: You weren't on the outs with [McPartlin], were you?
>
> Fragakis: No, I wasn't.
>
> Q: But you contend that he wanted to retaliate against you?
>
> Fragakis: Or he was told to.
>
> Q: By whom?
>
> Fragakis: I don't know. Maybe it was the person in – the state majority leader at the time who told me to a pay a contractor. Maybe he told [McPartlin] to retaliate against me.
>
> Q: But you don't have any evidence to that? That's sheer speculation, isn't it?
>
> Fragakis: That's speculation, and an odd coincidence.

Fragakis Dep. at 152.

Apart from the phone call, there is also no indication that the Martin issue was a point of contention with respect to Plaintiff's continued employment within Tollway. According to Plaintiff, no one within the organization ever pressured him to facilitate the Martin payment. Fragakis Dep. at 179-80. The payment was ultimately not made to Martin, so in that sense

-13-

Plaintiff's fear of inappropriate payment was unwarranted. *Id.* at 173-74 ("I was hoping that they would just take care of it and not pay the contractor. I was hoping the right thing would be done."). If it were true that those who opposed the Martin payment were to be terminated, there was just as much reason to terminate Volpe or others, as they bore greater responsibility for ultimately denying the payment. *See* Pl.'s Summ. J. Resp. Ex. W; Fragakis Dep. at 170-71 (admitting that Volpe and Hartman could have overriden Plaintiff's decision on whether or not to make the payment). Finally, it is not even clear that Plaintiff was in a position to have prevented the payment in question, or that he made much of an effort to do so; the only significant action he took in this regard was forwarding the phone message along.

Plaintiff has not established that the Martin payment was political, that the way in which it was dealt with was political, or even that it was causally connected to his termination in a manner that was inappropriately political. This would require additional evidence that the company in question was a political mover; that the actors were all similarly motivated by a common party view or scheme; and/or that the end purpose was to advance a particular political agenda. *See Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488 (7th Cir. 2002) ("In cases where plaintiffs have prevailed on political motivation claims, they have offered far more evidence than this, such as a pattern of decisions based on political factors, or direct testimony from someone other than the plaintiff that the defendant wanted to rid the division of a political opponent.") (citations omitted). In this instance, Plaintiff has provided no evidence that any of these are the case, or even of a political connection between the alleged malfeasors. *See Daniels v. Sheahan*, 103 F.Supp.2d 1043, 1045 (N.D. Ill. 2000) (finding that a general "atmosphere of political corruption" is insufficient for bringing the First Amendment into play). At worst, Plaintiff has

alleged actions that might amount to corruption, if it were shown that all of the actors had the common goal of seeing unjustified profit go to Martin. This allegation, even if proved, is too generalized and not sufficiently tied to participants' political viewpoint to implicate First Amendment rights, absent additional evidence of the political forces involved. For example, the mere fact that Plaintiff was allegedly urged by a Democratic party official to make the payment, though suggestive of political underpinnings, is insufficient to prove that the underlying motivations were political rather than merely corrupt.

Even if events surrounding the Martin payment fail to prove the politics of Tollway supervisors or Plaintiff himself, Plaintiff might have shown (in the alternative) that Defendant's reorganization determinations were politically motivated, i.e., through evidence that the reorganization fell disproportionately along political lines, or that his own firing shifted the political landscape within Tollway. Indeed, Plaintiff claims that his termination was part of a general move to get rid of employees to open up positions for Democratic Party-affiliated recruits. At the outset, the lack of knowledge at Tollway regarding Plaintiff's political affiliation makes this claim problematic. Even if this Court is to apply the more general concept of non-affiliation described above – amounting to a claim that he wasn't enough of a Democrat – Plaintiff's claim still fails.

Plaintiff has provided no evidence to show that the actions alleged to have been taken by Defendant were intended to be, or resulted in, a political shift in the Tollway workplace. Plaintiff could have provided some evidence that: those advancing the reorganization were all politically connected; employees negatively impacted by the reorganization were of a different party than their employers; or that the changes in employment were otherwise designed to shift

the political makeup of the tollway. However, Plaintiff has provided no such material. The only real evidence he does put forward is the timing of his termination and a few minor inconsistencies in Defendant's version of events. However, these do not amount to evidence on which a reasonable factfinder could find that Plaintiff's non-affiliation was a but-for cause of his termination.

Viewing all evidence, circumstantial or direct, in the forgiving light appropriate to Plaintiff's pro se status, and viewing conflicting facts in his favor, the evidence is still insufficient to provide reasonable grounds for finding retaliation based on political views. According to Plaintiff, he was terminated inappropriately either because of his failure to pay a contractor money, or to make room for other employees that they wanted to hire. There is no evidence to support these claims. In the absence of evidence, Plaintiff's deposition makes clear that he relies almost entirely on unsupported conjecture. *See, e.g.,* Fragakis Dep. at 154 (re: evidence of other terminations based on political party affiliation) ("I do not have concrete evidence. I read newspapers, I see the world, how it works, and that's what was happening at the Authority."). Plaintiff makes the same mistake as that of the *Garrett* plaintiff, attempting to make his case "on a nod, a wink, and the suggestion that 'we know what those politicians are like ... they'd re-organize a department to get rid of someone who voted the wrong way.'" 961 F.2d at 634. This is entirely insufficient for establishing a prima facie case of political viewpoint discrimination.

It is not necessary for this Court to determine the validity of Defendant's proffered explanation for the firing, as Plaintiff has failed to sustain his burden of establishing that a constitutional right was threatened. *See Abel v. Miller*, 824 F.2d 1522, 1534 (7th Cir.1987).

However, Even if Plaintiff had successfully established a prima facie case of retaliation based on his refusal to affiliate himself with the Democratic party, he failed to advance evidence to counter Defendant's proffered explanation for the termination.

Defendant has claimed that Plaintiff's position was simply eliminated during Tollway reorganization. Plaintiff advances some evidence that this was not the real reason behind the action, amounting to various minor inconsistencies in the evidence. *See generally* Pl.'s Summ. J. Resp. (asserting that his name was not included on a reorganization document titled "Possible Areas for Reduction," that his position was not in fact eliminated because there was still a "Building Maintenance Manager" listed on organizational charts after his termination, and that there are some additional inconsistencies of witnesses' testimony). The first two points were directly contradicted by Defendant's statements of fact that Plaintiff has failed to counter. Pl.'s Resp. to SUMF ¶¶ 12, 16 (admitting that Volpe believed Plaintiff's job duties were unnecessary and redundant, and that since his termination no one has been placed in his former position). The additional inconsistencies alleged in Defendant's case have been effectively addressed by Defendant, *see* Summ. J. Reply at 6-8, and, in any event, do not amount to a body of evidence sufficient to undermine Defendant's proffered explanation.

Plaintiff has failed to show that he engaged in any constitutionally protected activity, that any such activity served as a motivating factor in his termination, or that Defendant's proffered explanations should be doubted. For these reasons, summary judgment is GRANTED with respect to Plaintiff's federal retaliation claim (Count IX).

To the extent that Count IX seeks redress according to Plaintiff's rights under § 1985, it also fails. Any claim of conspiracy under Section 1985 must be based upon evidence of an

intent to deprive the plaintiff of his or her constitutional rights. *See Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996) (plaintiff must show that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [was] behind the conspirators' action"). As Plaintiff has not established that his political status was a "substantial or motivating factor" in his termination, there is also no basis for finding that there was a conspiracy to do so.

### *State Claims*

Summary judgment has been granted with respect to all federal claims. Because the remaining issues – retaliation under state law and breach of contract – fall solidly within the purview of state court jurisdiction, this Court declines to exercise supplemental jurisdiction over these claims, and they will be dismissed without prejudice. *See Carr v. CIGNA Sec., Inc.*, 95 F.3d 544 (7th Cir. 1996). Defendant's motion for summary judgment is GRANTED with respect to Counts VIII and VI.

### **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. This case is closed.

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

Dated: **June 8, 2007**